IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHASE BERNARDI, | ) | |
| | ) | |
| Plaintiff, | ) | 07 C 6656 |
| | ) | |
| v. | ) | |
| | ) | Judge Shadur |
| CITY OF CHICAGO, | ) | |
| A Municipal Corporation; and | ) | Magistrate Judge Valdez |
| Unknown Chicago Police Officers | ) | |
| John Does 1-2; | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S RESPONSE TO PLAINTIFF'S MOTION
TO TOLL THE STATUTE OF LIMITATIONS**

Defendant City of Chicago ("City"), by Mara S. Georges, Corporation Counsel for the City of Chicago, through her assistant, Ashley C. Kosztya, hereby responds to Plaintiff's Motion to Toll the Statute of Limitations in this matter as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

As alleged in Plaintiff's Complaint, on or about August 23, 2006, Plaintiff Chase Bernardi was on his way home from work when he stopped to speak to a friend of his named "Shannon," at the corner of 92nd Street and Ashland in the City of Chicago. [*See* Plaintiff's Complaint, ¶¶ 9-10, 12 ] After finishing his conversation with Shannon, Plaintiff continued walking home; when he (Plaintiff) reached the corner of Marshfield and 92nd, he turned around and saw some Chicago Police officers searching his friend. [*See* Plaintiff's Complaint, ¶¶ 12-14 ] Plaintiff continued walking and as he approached Paulina, two unknown Chicago Police officers jumped out of a police car, approached Plaintiff, grabbed his left arm, slammed him on the police car and handcuffed him. [*See* Plaintiff's Complaint, ¶¶ 13, 16, 18, 22, 23 ] Plaintiff alleges that at some point his handcuffs were

removed and he was told to leave. [*See* Plaintiff's Complaint, ¶ 33 ] Plaintiff alleges that he suffered ligament damage to his right shoulder from this incident. [*See* Plaintiff's Complaint, ¶ 35 ]

This alleged incident led Plaintiff to sue the City and Unknown Defendant Officers under 42 U.S.C. § 1983, claiming that an unreasonable seizure, excessive force and illegal search of his person occurred in violation of his Fourth Amendment rights. Plaintiff also includes an indemnification claim against the City in his Complaint (said Complaint was filed on November 27, 2007).

After Plaintiff filed suit and served the City, undersigned counsel filed her appearance on January 11, 2008. Subsequently, on February 26, 2008, counsel for Plaintiff left a voicemail and sent a letter to the City inquiring as to information regarding the identity of the unknown officers. The next day, undersigned counsel sent Plaintiff a letter via email stating that based on the minimal information contained in his 26(a) disclosures, the City had been unable to ascertain who these unknowns were. In the letter, the City asked that Plaintiff provide it with certain identifying information regarding the physical descriptions of the officers, the type of clothing they were wearing, the type of vehicle the officers drove, the full name of the individual named "Shannon," and any other identifying information that Plaintiff had. [*See* Exhibit A, Letter sent on February 27, 2008] Plaintiff's counsel contacted the City and stated that the officers were white males in an unmarked police vehicle. The parties then discussed setting up a photo array in the future.

Approximately four months later, undersigned counsel received a call from Plaintiff's counsel (on June 23, 2008), where he stated that Plaintiff was unaware of Shannon's last name, but that Plaintiff should be available to attend a photo array around July 10th - 12th, which would contain white male officers. The photo array did not take place in July as Plaintiff did not follow up with the City to set up a specific date and time. On August 14, 2008, Plaintiff's counsel contacted the City to state that Plaintiff was available the next week for a photo array.

The parties then arranged for the photo array to take place on Wednesday, August 20th. Counsel for the City arrived at Chicago Police Headquarters for the photo array at the prescribed time; however Plaintiff did not appear. Plaintiff's counsel subsequently informed the City that Plaintiff's military duties that day rendered him unavailable.

The City agreed to return to Police Headquarters the next day to conduct the photo array as Plaintiff. Counsel for the City arrived at Police Headquarters on Thursday, August 21st at the prescribed time, and was met by Plaintiff and his counsel. However, at that time, Plaintiff's counsel informed the City, for the first time, that Plaintiff had already viewed a photo array shortly after the incident in 2006 when he filed a complaint with the Office of Professional Standards ("OPS") (now known as the Independent Police Review Authority).

Undersigned counsel had learned earlier that day (August 21st) that a Complaint Register existed in this matter within the Independent Police Review Authority. Upon hearing (while at Headquarters) that Plaintiff had apparently identified officers previously for this matter, and knowing that the Plaintiff had a statute of limitations looming, she agreed to provide the Complaint Register (for attorney's eyes only) by the next day. However, as they were already at Headquarters, she did inquire whether Plaintiff wanted an opportunity to view the photo array that had been arranged as (1) the parties were already there and (2) in case she did not receive the Complaint Register by the next day from the Office of Legal Affairs, as it would have to be put in as a rush request. Plaintiff declined to conduct the photo array at that time.

Later that day (August 21st) undersigned counsel confirmed in writing that she would provide the Complaint Register in an expedited manner due to the statute of limitations issue. [*See* Exhibit B, Letter sent to Plaintiff's counsel on August 21, 2008] The next morning (August 22nd)

undersigned counsel sent another letter stating that the Complaint Register would be delivered to her that morning, and upon receipt she would immediately forward the information regarding the photo array to Plaintiff's counsel. [*See* Exhibit C, Letter sent on August 22, 2008]

When undersigned counsel received the Complaint Register in question, she reviewed it and noted that this particular Complaint Register (Log Number 1012550) had been registered on December 22, 2007 by Plaintiff's counsel's office and Plaintiff. The Complaint Register (and investigation) was closed on July 31, 2008 as Plaintiff did not give a statement and sign a sworn affidavit required by the Illinois Uniform Peace Police Officers Disciplinary Act. There is no information contained in this Complaint Register indicating that Plaintiff viewed a photo array in 2006 shortly after the incident occurred.

The City then immediately informed Plaintiff's counsel that no information was in the Complaint Register regarding the viewing of any photo array. Plaintiff's counsel indicated that there must be another Complaint Register regarding this alleged incident that the Plaintiff would have initiated prior to the filing of this Complaint Register, and that the photo array information must be contained in there.

Undersigned counsel offered to arrange, for the third time in three days, a photo array for the Plaintiff to review, as there was no information contained in Log Number 1012550 relating to the prior identification of any officers. Plaintiff's counsel informed the City shortly thereafter that Plaintiff would be unable to attend a photo array as he was on his way back to Fort Riley, Kansas.

Undersigned counsel investigated whether a separate Complaint Register was created prior to Log Number 1012550. She received confirmation on August 27, 2008 from the Independent Police Review Authority that only one Complaint Register (Log 1012550) was ever created in

relation to the incident alleged by Plaintiff, and there was no evidence that Plaintiff had viewed a photo array and identified officers shortly after the incident in August of 2006 (a search of the database of OPS produced no responsive records for any complaints/investigations concerning Chase Bernardi).

## RELEVANT STANDARDS & ARGUMENT

Plaintiff argues in his Motion to Toll the Statute of Limitations that he has acted diligently in trying to find the identity of these unknown officers, and that on this basis, without any supporting case law, he requests this Court to toll the statute of limitations. In response, the City states that Plaintiff has not been diligent – Plaintiff failed to arrange for a photo array, which he suggested take place, until two days before the statute of limitations expired for his cause of action, although he filed this action nine months prior to the expiration of the statute of limitations. He then failed to appear for the photo array, declined to participate in a photo array that was rearranged to accommodate his schedule the next day, and was then unavailable to attend a photo array on the day the statute expired. Further, Plaintiff did not mention to the City until the day before the statute of limitations expired that he had previously identified the officers who allegedly violated his civil rights.

In the alternative, Plaintiff requests in his motion that the Court "order the statute of limitations tolled pursuant to the Servicemembers Civil Relief Act[1], which in relevant part provides

---

[1] The Servicemembers' Civil Relief Act, 50 App. U.S.C. § 526, states: (a) Tolling of statutes of limitation during military service: The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the servicemember's heirs, executors, administrators, or assigns.

that 'The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court' ... 50 App. U.S.C.A. § 526." [*See* Plaintiff's Motion to Toll, ¶ 26]

### I. Plaintiff's motion must be denied as the tolling provision of 50 App. U.S.C. § 525 is not applicable to, and cannot prevent the running of time limitations of the service of process or the prosecution of actions already brought.

50 App. U.S.C.A. § 526 (Statute of Limitations) applies to tolling the time limitation for bringing an action, and not to tolling the time limitation for an action that has already been filed. (See *Zarlinsky v. Laudenslager,* 402 Pa. 290, 296, 167 A.2d 317 (Pa. 1961), where the court affirmed a lower court's judgment dismissing the plaintiff's suit (brought for damages resulting from a two-car collision) after the writ of summons was not served in a timely fashion (the plaintiff had argued that the period of time in which process should be served should not include the time the defendant was in military service):

> The appellants further rely upon Section 205 of the Soldiers' and Sailors' Civil Relief Act of 1940,[FN1] which provides that: 'The period of military service shall not be included in computing any period now or hereafter to be limited by any law, regulation, or order for the *bringing* of any action or proceeding in any court by or against any person in military service whether such cause of action or the right or privilege to institute such action or proceeding shall have accrued prior to or during the period of such service.' (Emphasis supplied.) But this Section expressly applies to the limitation of time for *bringing* an action, not to a limitation of time for the continuing of process in an action already brought and avails the plaintiffs nothing.
>
> 2. FN1. Act of October 17, 1940, c. 888, 54 Stat. 1178, 50 U.S.C.A.Appendix, § 501 et seq.
>
> *Zarlinsky v. Laudenslager,* 402 Pa. 290, 296, 167 A.2d 317, 320 (Pa. 1961).

Based on the above, Plaintiff's Motion to Toll the Statute of Limitations must be denied as he already filed suit in November of 2007.

The City also notes that there is no evidence in the record as to the exact period of time that Plaintiff has been an active member of the armed services, nor when he commenced service subsequent to being shipped out in August of 2008 to Fort Riley. The City further notes that Plaintiff filed the instant motion after the expiration of the statute of limitations.

## CONCLUSION

**WHEREFORE**, for each the foregoing reasons, the City respectfully requests that Plaintiff's Motion to Toll the Statute of Limitations be denied, and for any other relief this Court deems just.

Respectfully submitted,

MARA S. GEORGES,
Corporation Counsel
City of Chicago

By:   */s/ Ashley C. Kosztya*
ASHLEY C. KOSZTYA
Assistant Corporation Counsel

30 N. LaSalle St., Suite 1020
Chicago, Illinois 60602
(312) 744-6922

7